# CIVIL COVER SHEET

The JS-44 civil cover sheet and the Information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Chicago Title Insurance Company | Lexington & Concord Search and Abstract, LLC, Glenn Randall, Diane Smith, Lexicon Property Services, Inc., and White Stone Search & Abstract, Inc. |
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Cook County, IL (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) Francis X. Crowley, Esq. / Mark L. Rhoades, Esq. Blank Rome LLP One Logan Square, 18th & Cherry Streets Philadelphia, PA 19103    215-569-5500 | ATTORNEYS (IF KNOWN) |

| II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY) | III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR (For Diversity Cases Only) PLAINTIFF AND ONE BOX FOR DEFENDANT |
|---|---|

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
■ 4 Diversity (Indicate Citizenship of Parties in Item III)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ■ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated or Principal Place of Business in Another State | ■ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 151 Medicare Act ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholders' Suits ☐ 190 Other Contract ☐ 195 Contract Product Liability | **Personal Injury** ☐ 310 Airplane ☐ 315 Airplane Product liability ☐ 320 Assault libel & Slander ☐ 330 Federal Employers' Liability ☐ 340 Marine ☐ 345 Marine Product Liability ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability ☐ 360 Other Personal Injury | **Personal Injury** ☐ 362 Personal Injury – Med. Malpractice ☐ 365 Personal Injury – Product Liability ☐ 368 Asbestos Personal Injury Product Liability **Personal Property** ☐ 370 Other Fraud ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability | ☐ 610 Agriculture ☐ 620 Other Food & Drug ☐ 625 Drug Related Seizure of Property 21 USC 881 ☐ 630 Liquor Laws ☐ 640 R.R. & Truck ☐ 650 Airline Regs. ☐ 660 Occupational Safety/Health ☐ 690 Other **LABOR** ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 422 Appeal 28 USC 158 ☐ 423 Withdrawal 28 USC 157 **PROPERTY RIGHTS** ☐ 820 Copyrights ☐ 830 Patent ☐ 840 Trademark **SOCIAL SECURITY** ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 400 State Reapportionment ☐ 410 Antitrust ☐ 430 Banks and Banking ☐ 450 Commerce/ICC Rates/etc. ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations ☐ 810 Selective Service ☐ 850 Securities/Commodities/ Exchange ☐ 875 Customer Challenge 12 USC 3410 ☐ 891 Agricultural Acts ☐ 892 Economic Stabilization Act ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** ☐ 210 Land Condemnation ☐ 220 Foreclosure ☐ 230 Rent Lease & Ejectment ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property | **CIVIL RIGHTS** ☐ 441 Voting ☐ 442 Employment ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights | **PRISONER PETITIONS** ☐ 510 Motions to Vacate, Sentence **HABEAS CORPUS:** ☐ 530 General ☐ 535 Death Penalty ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition | ☐ 740 Railway Labor Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret Inc. Security Act | **FEDERAL TAX SUITS** ☐ 870 Taxes (U.S. Plaintiff or Defendant) ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determina- tion Under Equal Access to Justice ☐ 950 Constitutionality of state statutes ☐ 890 Other Statutory Actions |

| V. ORIGIN | (PLACE AN "X" IN ONE BOX ONLY) |
|---|---|

■ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 another district (specify)    Transferred from
☐ 6 Multidistrict Litigation
☐ 7 Magistrate Judgment    Appeal to District Judge from

| VI. CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity.): |
|---|---|
| | 28 U.S.C. § 1332(a) |
| | Brief description of cause: Complaint for injunctive relief to enjoin defendants from continuing to harm Plaintiff and to recover damages. |

| VII. REQUESTED IN COMPLAINT: | CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23 | DEMAND $ In excess of $75,000   CHECK YES only if demanded in complaint. JURY DEMAND:    ☐ YES    ☐ NO |
|---|---|---|

| VIII. RELATED CASE(S) (See instructions): IF ANY   NONE | JUDGE   N/A | DOCKET NUMBER   N/A |
|---|---|---|

| DATE  May 23, 2006 | ATTORNEY SIGNATURE |
|---|---|

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

035400.00450/21493853v.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| CHICAGO TITLE INSURANCE COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | NO. |
| LEXINGTON & CONCORD SEARCH AND ABSTRACT, LLC, et al | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus — Cases brought under 28 U.S.C. § 2241 through § 2255.                                                      ( )

(b)  Social Security — Cases re questing review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                                                                          ( )

(c)  Arbitration — Cases required to be designated for arbitration under Local Civil Rule 53.2.                           ( )

(d)  Asbestos — Cases involving claims for personal injury or property damage from exposure to asbestos.                                                                                 ( )

(e)  Special Management — Cases that do no t fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                                      ( )

(f)  Standard Management — Cases that do not fall into any one of the other tracks.                                        (✓)

Date:  May 23, 2006                                        Attorney-at-law , Francis X. Crowley

                                                                    Attorney for                    Plaintiff

(Civ. 660) 7/95

900200.00001/21464799v.1

## UNITED STATES DISTRICT COURT

APPENDIX F

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 171 North Clark Street, Chicago, IL 60601 / 1601 Market Street, Suite 2550, Phila., PA 19103

Address of Defendant: See attached sheet

Place of Accident, Incident or Transaction: Philadelphia, PA

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)).          Yes ☒   No ☐

Does this case involve multidistrict litigation possibilities?          Yes ☐   No ☑
*RELATED CASE, IF ANY:*

Case Number: N/A          Judge N/A          Date Terminated: N/A

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
          Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?          Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?          Yes ☐   No ☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
     (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☑ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
     (Please specify)

## ARBITRATION CERTIFICATION

*(Check appropriate Category)*

I, Francis X. Crowley          , counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought.

DATE: May 23, 2006          Attorney-at-law          41539
                                                     Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: May 23, 2006

LEXINGTON & CONCORD SEARCH AND
ABSTRACT, LLC
950 Industrial Boulevard, 2nd Floor
Southampton, PA  18966

GLENN RANDALL
1511 Norristown Road
Ambler, PA  19002

DIANE SMITH
1158 Wheatsheaf Lane
Abington, PA  19001

LEXICON PROPERTY SERVICES, INC.
950 Industrial Boulevard, 2nd Floor
Southampton, PA  18966

WHITE STONE SEARCH & ABSTRACT, INC.
1407 East Bristol Street
Philadelphia, PA  19124

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHICAGO TITLE INSURANCE COMPANY** : | |
| **1601 Market Street, Suite 2550** : | |
| **Philadelphia, PA 19103** : | |
| **Plaintiff,** : | |
| **v.** : | **Civil Action No. _____** |
| : | |
| **LEXINGTON & CONCORD SEARCH AND** : | |
| **ABSTRACT, LLC** : | |
| **950 Industrial Boulevard, 2nd Floor** : | |
| **Southampton, PA 18966** : | |
| : | |
| **and** : | |
| : | |
| **GLENN RANDALL** : | |
| **1511 Norristown Road** : | |
| **Ambler, PA 19002** : | |
| : | |
| **and** : | |
| : | |
| **DIANE SMITH** : | |
| **1158 Wheatsheaf Lane** : | |
| **Abington, PA 19001** : | |
| : | |
| **and** : | |
| : | |
| **LEXICON PROPERTY SERVICES, INC.** : | |
| **950 Industrial Boulevard, 2nd Floor** : | |
| **Southampton, PA 18966** : | |
| : | |
| **and** : | |
| : | |
| **WHITE STONE SEARCH & ABSTRACT, INC.** : | |
| **1407 East Bristol Street** : | |
| **Philadelphia, PA 19124** : | |
| : | |
| **Defendants.** : | |

## COMPLAINT

Plaintiff, Chicago Title Insurance Company, Inc. ("Chicago Title"), by its attorneys, files this

Complaint to enjoin defendants from continuing to harm Chicago Title and members of the public

and to recover damages sustained by Chicago Title (amounting to approximately $1,000,000 or more) as a result of funds being misappropriated by the defendants from real estate related financing transactions and other actions and omissions by the defendants.  In support of its claims, Chicago Title avers as follows:

## The Parties

1.    Chicago Title is a corporation duly organized and existing under the laws of the State of Missouri, with a principal place of business located at 171 North Clark Street, Chicago, IL  60601.

2.    Defendant, Lexington & Concord Search and Abstract, LLC ("Lexington"), is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 950 Industrial Boulevard, 2nd Floor, Southampton, Bucks County, Pennsylvania.

3.    Defendant, Glenn Randall ("Randall"), is an adult citizen of the Commonwealth of Pennsylvania, maintaining an address at 1511 Norristown Road, Ambler, Montgomery County, Pennsylvania 19002.

4.    Defendant, Diane Smith ("Smith"), is an adult citizen of the Commonwealth of Pennsylvania, maintaining an address at 1158 Wheatsheaf Lane, Abington, Montgomery County, Pennsylvania 19001.

5.    Defendant, Lexicon Property Services, Inc. ("Lexicon"), is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 950 Industrial Highway, Second Floor, Southampton, Bucks County, Pennsylvania 18966.

6.    Defendant White Stone Search & Abstract, Inc. ("White Stone") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place

2

of business located at 1407 East Bristol Street, Philadelphia, Pennsylvania, and which also has maintained a place of business at 950 Industrial Boulevard, 2nd Floor, Southampton, Pennsylvania.

7.     Lexington is a title insurance agency. At all relevant times, Lexington was a limited, non-exclusive title insurance agent for Chicago Title.

8.     Randall is the owner, officer and director of, and/or is employed by Lexington and Lexicon, and also is or was affiliated with White Stone.

9.     Smith, the mother of Randall, is the bookkeeper employed by Lexington and Lexicon, and exercises management over the operations and employees of Lexington and Lexicon, and had access to and control of Lexington for escrow and operating accounts.

10.    It is believed and therefore averred that Lexington and Lexicon, as more fully set forth in subsequent paragraphs of this Complaint, at all relevant times have been alter egos of one another and of Randall and Smith, and that Randall and Smith have used Lexington and Lexicon for their own benefit and to the detriment of Chicago Title and members of the public.

11.    It is believed and therefore averred that Lexicon and White Stone are successor companies to Lexington, which were used by Randall to continue to do title insurance business after the termination of the relationship between Chicago and Lexington as explained in detail in subsequent paragraphs of this Complaint.

12.    It is believed and therefore averred that Lexicon and White Stone are doing business out of the same location as Lexington.

## Jurisdiction and Venue

13.    The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3

14.     Venue is appropriate in this judicial district, pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events and omissions giving rise to Chicago Title's claims occurred in this judicial district.

15.     This matter is not subject to mandatory arbitration because the amount in controversey far exceeds $150,000, exclusive of interest and costs.

### Background

16.     Chicago Title is a title insurance underwriter that issues policies of title insurance to homeowners and lenders insuring against certain adverse claims or risks affecting title, subject to the terms and conditions of the policies.

17.     Chicago Title has developed a reputation for reliability and trustworthiness in the very competitive title insurance business by providing prompt, efficient and effective service in the issuance of its policies of title insurance.

18.     To assist in the conduct of its business, Chicago Title appoints limited, non-exclusive policy issuing agents pursuant to the terms and conditions of written issuing agency agreements.

### Chicago Title's Agency Agreement with Lexington

19.     On January 30, 2003, Chicago Title and Lexington entered into an agreement ("Lexington Agency Agreement") appointing Lexington as a non-exclusive policy issuing agent for Chicago Title in the Commonwealth of Pennsylvania. A true and correct copy of the Lexington Agency Agreement is attached hereto as Exhibit "A."

20.     The Lexington Agency Agreement was amended on June 4, 2004 (the "Lexington Amendment"), to appoint Lexington as a non-exclusive policy issuing agent for Chicago Title in the State of New Jersey. A true and correct copy of the Lexington Amendment is attached as Exhibit "B." The Lexington Agency Agreement and the Lexington Amendment collectively shall be referred to hereinafter as the "Lexington Agency Agreement."

4

21. Randall executed the Lexington Agency Agreement on behalf of Lexington.

22. Randall also executed a personal guaranty (the "Lexington Guarantee") of all of the duties and obligations of Lexington under the Lexington Agency Agreement. A true and correct copy of the Lexington Guarantee is attached as Exhibit "C."

23. The Lexington Agency Agreement imposed numerous duties and obligations upon Lexington (and, by virtue of the Lexington Guaranty, upon Randall), including but not limited to the following:

a. Lexington was required to "receive and process applications for title insurance in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with [Chicago Title's] bulletins, manuals and other instructions of [Chicago Title] . . . " (Ex.A., ¶4A);

b. Lexington was required to "[p]repare, preserve and maintain . . . a separate file for each application for title insurance containing all documents upon which [Lexington] relied to make its determination of insurability ... together with a copy of each commitment, policy, endorsement and other title assurance issued as well as closing statements, disbursement worksheets, copies of all checks distributed and receipted, deposit slips, escrow agreements and any other instruments or documents executed or created at Closing." (Ex.A., ¶4D);

c. Lexington was required to "[c]omply with all applicable laws and regulations relating to the conduct of [Lexington's] business." (Ex. A., ¶4J);

d. Lexington was required to "[m]aintain a policy register ... showing the disposition of all policies and other prenumbered forms furnished by [Chicago Title]. Upon request by [Chicago Title], [Lexington] shall furnish a statement accounting for all such forms

5

and shall return all spoiled, obsolete or cancelled policies and forms to [Chicago Title]."

(Ex.A, ¶4F).

24.     Lexington is liable to Chicago Title and agreed to indemnify and hold harmless
Chicago Title for all losses arising from the "[f]ailure of [Lexington], its officers and employees to
comply with the terms of [the Lexington Agency Agreement] or with the guidelines, regulations or
instructions given to [Lexington] by [Chicago Title]." (Ex.A., ¶8D).

25.     In instances where Lexington closed real estate transactions and received and
disbursed funds, Lexington was required to do the following:

     a.     "maintain said funds safely in accounts insured by an agency of the Federal
Government and in accordance with applicable state laws;"

     b.     "maintain separate from [Lexington's] personal and operating accounts all
funds received by [Lexington] from any source in connection with transaction(s) in which
[Chicago Title's] title insurance is involved;"

     c.     "disburse such funds only for the purpose for which they were entrusted;"

     d.     "maintain an escrow ledger for each title insurance order involving fiduciary
funds, which ledger shall separately reflect the escrow activity for each order;"

     e.     "maintain a control account showing total fiduciary liability for each escrow
bank account; and"

     f.     "reconcile monthly the control account and ledger records to the monthly bank
statement. [Chicago Title] shall have the right to examine, audit and approve [Lexington's]
accounting procedures to assure compliance with [Chicago Title's] Escrow Accounting
Manual . . .". (Ex.A., ¶4I).

### Chicago Title Becomes Aware of Problems

26.     Chicago Title has discovered that Lexington, its officers, employees and
representatives, committed numerous substantial accounting irregularities including, but not limited
to: (a) misappropriation of funds intended to satisfy mortgages at closings; (b) commingling of funds
between Lexington's operating accounts and Lexington's escrow settlement trust accounts; (c)
making unauthorized disbursements; (d) making disbursements in the wrong amounts or to the wrong
payees; (e) issuing checks and wire payments when it was known or when it should have been known
that there were insufficient funds in the escrow account to cover such payments; (f) numerous
improper actions and omissions in connection with the conduct of real estate closings; and (g)
numerous improper actions and omissions in the issuance of title commitments and title policies. All
of these actions and omissions violated the Lexington Agency Agreement and Lexington's duties as a
fiduciary with regard to the funds it was to hold in escrow and as an issuing agent for Chicago Title.

27.     Chicago Title investigated the misappropriation of funds, commingling of funds and
the other improper actions and omissions which violated the Lexington Agency Agreement and, on
February 10, 2006, Chicago Title terminated the Lexington Agency Agreement.

## Chicago Title's Preliminary Audit Findings

28.     On March 13, 2006, Chicago Title dispatched a team of auditors to the offices of
Lexington to conduct a preliminary audit of Lexington's books and records.

29.     As part of the audit, Chicago Title confirmed that Lexington, Randall and Smith
beginning at least in 2005 and continuing into 2006, had engaged in a pattern of commingling funds
between Lexington's operating account and the escrow settlement trust account.

30.     The preliminary audit concluded that there was a cash shortfall in the escrow
settlement trust account in excess of $700,000. Chicago Title has not yet been able to trace the
disposition of these $700,000 in missing funds and Lexington has not been able to explain the
absence of these funds. Lexington's escrow account has an essentially $0 balance, despite the fact

7

that there are numerous substantial obligations which should have been paid from the escrow account but for which there are no funds available.

31.    Chicago Title also learned during the preliminary audit that, in one or more transactions, multiple Settlement Statements or HUD-1s were completed for a single real estate transaction, which contained false and contradictory information as to the disposition of funds.

32.    It was also learned by Chicago Title during its ongoing investigation that Lexington continued to write numerous checks on its escrow settlement trust account despite the fact that it knew or should have known of the shortage, and that as a result, checks and wire disbursements amounting to at least S413,000 written by Lexington as part of real estate settlements were not honored due to insufficient funds.  Since Lexington had issued title policy commitments or actual title policies in connection with these transactions, those transactions have and will continue to result in substantial claims against Chicago Title.  As an example, one of those transactions has resulted in a claim of at least $335,000 against Chicago Title.

### Chicago Title Also Has been Harmed By Other Acts And Omissions Of Lexington

33.    Lexington engaged in numerous improper actions and omissions in the conduct of real estate financing transactions and issuing title policies in connection therewith which failed to satisfy the requirements of the Lexington Agency Agreement and in which Lexington failed to meet the standard of care required for a prudent issuing agent, including but not limited to:

       a.    issuing commitments and policies which failed to except known title defects;

       b.    failure to collect the proper amounts from parties to the transaction;

       c.    failure to require the proper documentation of title;

       d.    failure to exercise diligence in determining whether liens were in existence or had been satisfied;

       e.    making payments to the wrong parties or third parties;

8

f.      making unauthorized or improper disbursements and disbursements in the

wrong amounts;

g.      failure to require the presentation of all necessary and prudent documentation;

h.      failure to adequately and reasonably supervise its title clerks, closing officers,

and other employees or representatives; and

i.      failing to maintain all necessary and prudent records and files.

34.      The actions and omissions have resulted directly in claims against Chicago Title and

will continue to cause Chicago Title to sustain substantial harm.

## The Alter Ego And Successor Companies

35.      As of May 19, 2006, Lexington still held itself out as conducting business.

36.      At all times relevant to this Complaint, Lexington and Lexicon were under capitalized,

failed to observe corporate formalities, commingled their accounts and assets and were utilized by

Randall and Smith for their own personal benefit.

37.      At all times relevant to this Complaint, Lexington and Lexicon were the alter egos of

one another and of Randall and Smith.

38.      As alter egos of one another, Lexington, Lexicon, Randall and Smith therefore are

liable for each other's actions and omissions.

39.      Investigation by Chicago Title has revealed that, despite termination by Chicago Title,

Lexington, Randall and Smith continued to operate a title insurance agency through Lexicon and

White Stone.

40.      Lexicon and White Stone operated, and are believed to continue to be operating, out of

the same location as Lexington had, under the direction and control of Randall and Smith, and using

the employees, resources and assets of Lexington.

9

035400.00450/21493708v.1

41.    Lexicon and White Stone are the successors in interest to Lexington and are liable for the debts and obligations of Lexington.

## COUNT I - INJUNCTIVE RELIEF

### Chicago Title v. All Defendants

42.    The allegations of paragraphs 1 through 41 inclusive are incorporated by reference.

43.    Lexington and Randall have misapplied and/or misappropriated monies in violation of the Lexington Agency Agreement with Chicago Title and the laws of the Commonwealth of Pennsylvania.

44.    Lexington, Randall and Smith actively participated in the misapplication and misappropriation of settlement trust account monies.

45.    As a result of the misappropriations, there is a shortage in the bank accounts of Lexington in an amount in excess of $700,000.

46.    As the result of defendants' actions and omissions and the failure of Lexington and Randall to comply with their obligations under the Lexington Agency Agreement and the Lexington Guarantee, Chicago Title is suffering and will continue to suffer immediate and irreparable injury in that:

a.    Chicago Title's reputation has been and is being damaged in the industry as the result of Lexington and Randall's failure to fulfill their obligations to its customers and to Chicago Title;

b.    Lexington and Randall have failed to account for escrow and settlement trust funds;

c.    Chicago Title has received and is exposed to numerous claims due to numerous title claims resulting from defendants' misappropriation of trust fund monies and wrongful conduct; and

10

035400.00450/21493708v.1

        d.      Numerous homeowners are subject to potential foreclosure actions and other actions which will harm their credit ratings, as a result of Lexington's failure to payoff pre-existing mortgages, liens and judgments, which will result in additional claims against Chicago Title.

47.      Chicago Title is entitled to specific performance of the terms of the Lexington Agency Agreement and to immediate equitable relief in the nature of an Injunction, including but not limited to the freezing of the assets of defendants and prohibiting defendants from selling, disposing or in any way transferring any assets pending further Order of this Court.

48.      Chicago Title is entitled to exercise its right to review records of Lexington (and of Lexicon, Randall and Smith as the alter ego of Lexington) under 40 P.S. § 910.26.1(5).

49.      Greater injury will result to Chicago Title and the public, from the denial of the injunction than will result to defendants from the grant of the injunction.

50.      Chicago Title has no adequate remedy at law and, unless it obtains immediate equitable and injunctive relief, it will continue to suffer immediate and irreparable harm.

51.      Harm will be suffered by the public if injunctive relief is not issued and third parties may continue to believe that Lexington and Randall (or Smith, Lexicon and White Stone as their successors or alter egos) are authorized to act on behalf of Chicago Title in issuing policies of title insurance.

**WHEREFORE**, Chicago Title respectfully request that this Honorable Court enter an Order preliminarily until hearing, and perpetually thereafter:

        a.      enjoining all defendants from engaging in or holding themselves out as engaging in any activity or business on behalf of Chicago Title or otherwise engaging in the business as issuing agents for title insurance policies;

11

b.      enjoining defendants from transacting any banking business, either directly or indirectly, and otherwise freezing all bank accounts with respect to any bank accounts of Lexington, Lexicon, White Stone, Randall and Smith;

c.      directing defendants to immediately deliver to Chicago Title any and all books and records of Chicago Title, including corporate records, title and/or settlement files, title policies, settlement sheets and all other title documents and any and all bank account records and bank account statements of Chicago Title from January 1, 2003 to the present;

d.      directing defendants to immediately return to Chicago Title all original unused documents including, but not limited to, settlement sheets, all unused commitment jackets, all unused title insurance policies, all copies of said documents, as well as all other documents bearing the name of Chicago Title;

e.      enjoining defendants from utilizing, transferring, disposing of or in any manner handling any monies belonging to Chicago Title;

f.      enjoining defendants from selling, disposing or transferring any assets without Court approval; and

g.      granting such other and further equitable relief as may be appropriate and necessary as a result of the wrongful conduct of defendants.

## COUNT II - BREACH OF CONTRACT

### Chicago Title v. All Defendants

52.     The allegations of paragraphs 1 through 51 inclusive are incorporated herein by reference.

53.     As more fully set forth above, Lexington breached the Lexington Agency Agreement, including, but not limited to paragraphs 4A, 4D, 4F, 4I, 4J, and 8D by, inter alia,

12

035400.00450/21493708v.1

a.      failing to conduct its business in a sound and ethical manner and in accordance with the rules and regulations of Chicago Title;

b.      failing to conduct its business in accordance with the laws of the Commonwealth of Pennsylvania;

c.      commingling, misapplying, misappropriating trust funds and failing to account for escrow funds;

d.      failing to process the policy applications and issue title policies in a proper and prudent manner; and

e.      failing to maintain adequate, necessary and reasonable records.

54.     As a result of the breaches of the Lexington Agency Agreement, Chicago Title has been and will continue to be exposed to substantial and increasing losses in an amount that has not yet been fully determined, but which reasonably is anticipated to exceed $1,000,000 and which will include but not be limited to the amounts paid by Chicago Title to prior lenders and attorneys' fees and costs incurred by Chicago Title to protect its policy holders and defend against foreclosure actions brought by prior lenders whose mortgages were not satisfied as a result of the actions and omission of Lexington and its employees, agents and representatives.

55.     Lexington is liable for all such losses, attorneys' fees and costs incurred by Chicago Title as follows:

a.      Pursuant to paragraph 8 of the Lexington Agency Agreement, Lexington is obligated to reimburse Chicago Title for all losses resulting from the failure of Lexington to comply with the terms of the Lexington Agency Agreement.

13

    b.     Pursuant to paragraph 8 of the Lexington Agency Agreement, Lexington is obligated to reimburse Chicago Title for all losses resulting from the commission of a fraud or defalcation by Lexington.

    c.     Pursuant to paragraph 8 of the Lexington Agency Agreement, Lexington is obligated to pay all attorneys' fees and costs incurred by Chicago Title.

56.    Lexicon and White Stone are liable to Chicago Title for these injuries as the successors in interest to Lexington.  Lexicon, Randall, and Smith are liable to Chicago Title for these injuries as the alter egos of Lexington.

**WHEREFORE**, Chicago Title requests that judgment be entered in its favor and against each defendant, jointly and severally, in the amount of any losses, expenses, court costs and attorneys' fees incurred by Chicago Title, which amount is in excess of $150,000.

## COUNT III – CLAIM UNDER LEXINGTON GUARANTY

### Chicago Title v. Randall

57.    The allegations of paragraphs 1 through 56 inclusive are incorporated herein by reference.

58.    On September 5, 2003, Randall executed the Lexington Guaranty under which he assured Chicago Title of the full, prompt and complete performance of all terms, agreements, covenants, conditions and undertakings of Lexington under the Lexington Agency Agreement.

59.    As set forth above, Lexington has failed to fulfill its obligations under the Lexington Agency Agreement.

60.    As a result, Randall is personally liable under the Lexington Guarantee for all such losses, attorneys' fees and costs incurred by Chicago Title.

14

61.     Randall has failed or refused to comply with his obligations to Chicago Title under the Lexington Guaranty, and his failure and refusal to comply has caused and will continue to cause harm to Chicago Title.

**WHEREFORE**, Chicago Title requests that judgment be entered in its favor and against Randall in the amount of any losses, expenses, court costs and attorneys' fees incurred by Chicago Title, which amount is in excess of $150,000.

## COUNT IV — BREACH OF FIDUCIARY DUTY
### Chicago Title v. All Defendants

62.     The allegations of paragraphs 1 through 61 inclusive are incorporated herein by reference.

63.     As a result of Lexington's position as an issuing agent of the Chicago Title and Randall's position as an officer and principal of Lexington, they each owed fiduciary duties to Chicago Title.

64.     Both Lexington and Randall breached their fiduciary duties to Chicago Title by the actions and omissions more fully set forth above and are jointly and severally liable to Chicago Title for all losses sustained.

65.     Each other defendant is jointly and severally liable for all losses sustained by Chicago Title since White Stone and Lexicon are successors to Lexington and Lexicon and Smith were alter egos of Lexington.

**WHEREFORE**, Chicago Title requests that judgment be entered in its favor and against each defendant, jointly and severally, in the amount of any losses, expenses, court costs and attorneys' fees incurred by Chicago Title, which amount is in excess of $150,000.

15

## COUNT V – CONVERSION

### Chicago Title v. All Defendants

66.     The allegations of paragraphs 1 through 65 inclusive are incorporated herein by reference.

67.     Defendants misapplied and/or converted monies constituting trust funds to their own use and benefit.

68.     The monies were entrusted to defendants for the purpose of paying of specific obligations of the parties so entrusting the monies, and defendants had no legal or equitable interest in such funds.

69.     The defendants' conversion of the trust funds is wrongful as a matter of law.

70.     Chicago Title has sustained and reasonably is anticipated to sustain losses of in excess of $1,000,000 as a result of the misapplication and conversion of the trust funds.

71.     Defendants are liable for all losses sustained by Chicago Title.  Defendants Lexicon and White Stone are liable as successors in interest to Lexington, and Lexicon, Randall and Smith are liable as alter egos of Lexington.

72.     Chicago Title is entitled to an award of punitive damages as a result of the willful, wanton and reckless conduct of defendants.

**WHEREFORE**, Chicago Title requests that judgment be entered in its favor and against each defendant, jointly and severally, for compensatory and punitive damages in an amount in excess of S150,000, plus attorneys' fees and costs.

## COUNT VI – NEGLIGENCE

### Chicago Title v. All Defendants

73.     The allegations of paragraphs 1 through 72 inclusive are incorporated herein by reference.

74.     As an issuing agent of Chicago Title, Lexington owed a duty to Chicago Title to conduct its operations consistent with the standard of care in the title insurance industry and to safeguard the funds entrusted to its care.

75.     Lexington failed to conduct its operations consistent with the standard of care in the title insurance industry and otherwise breached its duties by the actions and omissions set forth above including, but not limited to:

   a.     failing to have prudent and sufficient procedures in place, and to otherwise act, to accurately record and monitor the disbursement of mortgage proceeds;

   b.     failing to have prudent and sufficient procedures in place, and to otherwise act, to prepare accurate and truthful records of each closing transaction;

   c.     failing to maintain true, correct, accurate and complete financial records for the business;

   d.     failing to appropriately supervise its employees, agents and representatives;

   e.     failing to place appropriate controls on its escrow settlement trust accounts and on trust funds entrusted to its care;

   f.     failing to properly and prudently monitor and manage its escrow settlement trust accounts;

   g.     failing to take prudent steps to protect against theft and defalcation; and

   h.     failing to take other steps reasonably or customarily taken by title agents to protect escrow funds and the interests of its principals.

17

i. failing to properly collect and disburse funds in connection with closings on various transactions;

j. failing to obtain appropriate documentation concerning the existence or satisfaction of liens;

k. failing to exercise reasonable diligence and care with regard to the issuance of title commitments and/or policies.

76. The actions and omissions of Lexington constitute negligence and are the direct and proximate cause of injury and harm to Chicago Title.

77. Randall and Smith are liable to Chicago Title because they actively and directly participated in the negligent acts and omissions.

78. Lexicon and White Stone are liable as successors in interest to Lexington, and Lexicon, Smith and Randall are liable as alter egos of Lexington.

**WHEREFORE**, Chicago Title requests that judgment be entered in its favor and against each defendant, jointly and severally, in an amount in excess of $150,000, plus costs.

## COUNT VII – ACCOUNTING

### Chicago Title v. All Defendants

79. The allegations of paragraphs 1 through 78 inclusive are incorporated herein by reference.

80. As fiduciaries, defendants are responsible to account for all monies that were entrusted to their possession.

81. Defendants have misapplied and misappropriated the monies entrusted to their possession.

18

035400.00450/21493708v.1

82.     Defendants must be required to prepare an accounting setting forth all monies received by them and the disposition of all said monies.

83.     Defendants must be required to account for the monies misappropriated and diverted to themselves and to third parties.

**WHEREFORE**, Chicago Title requests that judgment be entered in its favor and against each defendant, jointly and severally, requiring defendants to provide an accounting as called for in this Complaint and to disgorge all amounts improperly received by each such defendant, and such other and further relief as may be deemed necessary by the Court.

## COUNT VIII – UNJUST ENRICHMENT

### Chicago Title v. All Defendants

84.     The allegations of paragraphs 1 through 83 inclusive are incorporated herein by reference.

85.     Defendants have misapplied and/or taken monies, and/or have received monies taken, from the settlement trust accounts of Chicago Title for their own use and benefit, to the detriment of Chicago Title.

86.     By taking or receiving the monies, defendants have been unjustly enriched and allowing defendants to retain such funds would be unjust and inequitable.

87.     The Court must require defendants to pay any monies that they took from the settlement trust accounts for their own use and benefit.

**WHEREFORE**, Chicago Title requests that a judgment be entered in its favor and against each defendant, jointly and severally, in the amount by which defendants have been unjustly enriched, which amount is in excess of $150,000, and requiring each defendant to disgorge all amounts by which they were unjustly enriched, together with costs of suit.

19

## COUNT IX – CONSPIRACY

### Chicago Title v. All Defendants

88.    The allegations of paragraphs 1 through 87 inclusive are incorporated herein by reference.

89.    Each and every defendant agreed to act in concert to misapply and/or misappropriate the trust funds and otherwise commit intentional and negligent acts and omissions which have caused and will cause harm to Chicago Title, as more fully set forth above.

90.    Each defendant took actions in furtherance of that conspiracy, resulting in harm to Chicago Title.

91.    The actions of each defendant, individually and in concert, were improper and constituted torts.

92.    Chicago Title, as well as numerous third parties, have been harmed by their conspiracy and will continue to be harmed by the conspiracy.

93.    Defendants Lexicon and White Stone are liable as conspirators and as successors in interest to Lexington.

**WHEREFORE**, Chicago Title requests that judgment be entered in its favor and against each defendant, jointly and severally, in an amount in excess of $150,000, together with punitive damages and costs of suit.

## COUNT X – FRAUD

### Chicago Title v. All Defendants

94.    The allegations of paragraphs 1 through 93 inclusive are incorporated herein by reference.

20

95.     Pursuant to the terms of the Lexington Agency Agreement, Lexington was required to submit and make available various financial statements and other financial information to Chicago Title, including but not limited to monthly reconciliations and disbursement sheets ("the Financial Information"), on a periodic basis to be audited and/or reviewed by Chicago Title.

96.     To prevent Chicago Title from uncovering their improper actions and omissions, defendants jointly prepared the Financial Information to contain false information so that it would not appear that defendants had misappropriated approximately $700,000. Rather, the Financial Information falsely showed that all proper disbursements were made and that all accounts contained the proper balances, as well as other intentionally false and misleading information.

97.     Defendants, through the actions of Randall, Smith and other employees or representatives prepared the Financial Information and presented it to Chicago Title intending that Chicago Title rely upon it.

98.     Chicago Title reasonably relied upon the Financial Information provided by Lexington, and prepared by Randall and, as a result of that reliance, has been harmed because it was unable to discover defendants' defalcation despite taking reasonable steps to do so.

99.     Defendants' actions were wanton, willful, malicious and were taken in total disregard for the rights of Chicago Title and the numerous third parties.

100.    Lexicon and White Stone are liable to Chicago Title as the successors in interest to Lexington; Lexicon, Smith and Randall are liable to Chicago Title as alter egos of Lexington.

**WHEREFORE**, Chicago Title requests that judgment be entered in its favor and against each defendant, jointly and severally, in an amount in excess of $150,000, together with punitive damages, attorneys' fees and costs of suit.

21

## COUNT XI – NEGLIGENT MISREPRESENTATION

### Chicago Title v. All Defendants

101.    The allegations of paragraphs 1 through 100 inclusive are incorporated herein by reference.

102.    Pursuant to the Lexington Agency Agreement and by law, Lexington had the duty to prepare and maintain accurate, complete and truthful Financial Information and to provide or otherwise make such Financial Information available to Chicago Title for periodic review and audit.

103.    As the principal, owner, operator and officer of Lexington, Randall had the duty to cause Lexington to prepare and maintain accurate, complete and truthful Financial Information and to provide or otherwise make such Financial Information available to Chicago Title for periodic review and audit.

104.    Chicago Title did periodically review and/or audit the Financial Information of Lexington.

105.    At all times relevant to this Amended Complaint, defendants Lexington and Randall represented, by the submission of the false Financial Information to Chicago Title, that (among other things):

      a.    all disbursements were properly made by Lexington;

      b.    the disbursement sheets and related documents supplied by Lexington to Chicago Title were true and accurate;

      c.    all escrow settlement trust accounts maintained by Lexington contained the proper amounts of funds; and

      d.    all escrow and trust funds were accounted for properly.

106.    The representations were reasonably and justifiably relied upon by Chicago Title.

22

107.    Lexington and Randall knew or should have known that those representations were false and had a duty to disclose the fact to Chicago Title.

108.    The actions of Lexington and Randall in making these misrepresentations were negligent and/or grossly negligent.

109.    Chicago Title was harmed by its reasonable and justifiable reliance on the misrepresentations of Lexington and Randall.

110.    Lexicon and White Stone are liable to Chicago Title as successors in interest to Lexington; Lexicon and Smith are liable to Chicago Title as alter egos of Lexington.

**WHEREFORE**, Chicago Title requests that judgment be entered in its favor and against each defendant, jointly and severally, in an amount in excess of $150,000, together with attorneys' fees and costs of suit.

## COUNT XII – INTERFERENCE WITH CONTRACTS

### Chicago Title v. Randall, Smith and Lexicon

111.    The allegations of paragraphs 1 through 110 inclusive are incorporated herein by reference.

112.    Randall, Smith and Lexicon, by their actions and omissions, intentionally have prevented Lexington from fulfilling its contractual obligations to Chicago Title under the Lexington Agency, Agreement, as more fully set forth above.

113.    The actions and omissions of Randall, Smith and Lexicon were undertaken for the purpose and with the knowledge that such actions would harm Chicago Title.

114.    Randall, Smith and Lexicon exercised managerial authority over Lexington and its employees, and caused Lexington to conduct its business in such a manner that it could not comply with its contractual duties and obligations to Chicago Title.

23

115.    At all times relevant hereto, Randall and Smith were aware of the existence of the

Lexington Agency Agreement and had knowledge of Lexington's duties and obligations thereunder.

116.    Randall and Smith did not act in good faith and their actions or omissions that

interfered with Lexington's fulfillment of its obligations to Chicago Title were not undertaken for any

legitimate business purpose and were not otherwise privileged.

117.    The interference by Randall and Smith with Lexington's performance of its

obligations and duties under the Issuing Agency Contract between Chicago and Lexington has caused

and will continue to cause substantial, direct and immediate harm to Chicago Title.

118.    Lexicon is liable to Chicago Title as the alter ego of Randall and Smith.

WHEREFORE, Chicago Title requests that judgment be entered in its favor and against

defendants Glenn Randall, Diane Smith and Lexicon Property Services, Inc., jointly and severally, in

an amount in excess of $150,000, together with punitive damages and costs of suit.

BLANK ROME LLP

BY:

FRANCIS X. CROWLEY, ESQUIRE (fxc4925)
MARK L. RHOADES, ESQUIRE (mlr3117)
One Logan Square
Philadelphia, PA 19102
(215) 569-5500

*Attorneys for Plaintiff*
*Chicago Title Insurance Company*

Dated: May 23, 2006

24

# EXHIBIT "A"

## ISSUING AGENCY CONTRACT

This Issuing Agency Contract ("Contract") is made and entered into this $\underline{30}$ day of $\underline{\text{JAN}}$, 2002 by and between CHICAGO TITLE INSURANCE COMPANY, a Missouri corporation, hereafter referred to as "Principal" and Lexington & Concord Search and Abstract, L.L.C., A Pennsylvania corporation, referred to as "Agent".

In consideration of the promises and the mutual covenants herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Principal and Agent agree as follows:

1. **APPOINTMENT OF AGENT.** Principal hereby appoints Agent as a policy issuing agent of Principal for the sole purpose of issuing title insurance commitments, policies, endorsements and other title assurances approved by Principal and by all required regulatory agencies, now in existence or hereafter developed, relating to real property located in all counties in the Commonwealth of Pennsylvania in accordance with the terms of this Contract. During the term of this Contract, Agent shall have the right to issue title insurance commitments, policies and endorsements of any title insurance company in the referenced geographic area.

   Principal or its affiliates shall have, and do retain, the right to appoint other agents in the referenced geographic area.

   Notwithstanding the foregoing, pertaining to the referenced geographic area, Principal and its affiliates shall have, and do retain, the right to service directly any customer, and Principal or its affiliates may, without limitation, do any of the following:
   (i) issue directly, from any of its offices, or from any location nationwide, commitments, policies, endorsements, or any other title assurance or evidence, search or real estate information product, or any other product whatsoever, now in existence or hereafter developed (all of the foregoing are hereafter collectively referred to as "Information"); (ii) purchase or otherwise obtain from any source any search data or Information.

2. **CONTRACT TERM.** The term of this Contract shall commence on $\underline{\text{Feb.3,2003}}$ and may be terminated by either party giving notice to the other pursuant to the terms of Paragraph 9A herein.

3. **DUTIES OF PRINCIPAL.** Principal shall:
   A. Furnish Agent forms of commitments, policies, endorsements and other forms required for transacting Agent's title insurance business.
   B. Furnish Agent guidelines and instructions for transacting Agent's title insurance business.
   C. Resolve all risk assumption questions submitted by Agent.
   D. Arrange for reinsurance where required, to the extent such reinsurance is available.

4. **DUTIES OF AGENT.** Agent shall:
   A. Receive and process applications for title insurance in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with Principal's bulletins, manuals and other instructions of Principal, supplied by Principal to Agent.
   B. Base each policy issued on behalf of Principal upon a determination of insurability of title which includes
   (i) a search from earliest public records or in accordance with Principal's written instructions; and
   (ii) an examination of all documents affecting title to the subject property.
   C. Supply, at Agent's expense, office space and qualified personnel for conducting business pursuant to this Contract by the date hereof.
   D. Prepare, preserve and maintain in Agent's possession a separate file for each application for title insurance containing all documents upon which Agent relied to make its determination of insurability, including, but not limited to: affidavits, maps, plats, lien waivers, surveys, title reports, searches, examinations, and work sheets, together with a copy of each commitment, policy, endorsement and other title assurance issued as well as closing statements, disbursement worksheets, copies of all checks disbursed and receipted, deposit slips, escrow agreements and any other instruments or documents executed or created at Closing. Title to files shall vest in Agent. Principal shall have an unrestricted right to copy files during normal business hours.
   E. Send to Principal a copy of each policy, endorsement and other title assurance issued by Agent.
   F. Maintain a policy register in a form approved by Principal showing the disposition of all policies and other pre-numbered forms furnished by Principal. Upon request by Principal, Agent shall furnish a statement accounting for all such forms and shall return all spoiled, obsolete or canceled policies and forms to Principal. Agent shall safely maintain and store all forms furnished by Principal and hereby assumes liability for loss or damage suffered by Principal by reason of Agent's wrongful or negligent use or storage of such forms.
   G. Provide Principal each year, copies of annual financial statements of the agency and an updated Information Affidavit, such financial statements to be kept confidential by Principal.
   H. Perform such services and render such assistance as Principal may reasonably request in connection with any claim or litigation arising from a commitment, policy, endorsement or other title assurance issued by Agent or by Principal on behalf of Agent or on account of any conduct of Agent, whether such claim or litigation is instituted during the term of this Contract or following termination thereof. In addition, Agent shall promptly forward to Principal: (i) all documents received by Agent in which Principal is a party to judicial proceedings; (ii)all written complaints or inquiries made to any regulatory agency regarding transactions involving title insurance policies, endorsements, commitments or other title assurances of Principal; (iii)any information alleging a claim involving a policy, commitment, endorsement or other title assurance of Principal or a transaction for which Principal may be liable; and (iv)all original documentation and work papers associated with the transaction or conduct giving rise to any claim or complaint.

I._____ In those instances where Agent closes real estate transactions and receives and disburses funds of others, Agent shall:

    a. maintain said funds safely in accounts insured by an agency of the Federal Government and in accordance with applicable state laws;

    b. maintain separate from Agent's personal or operating accounts all funds received by Agent from any source in connection with transaction(s) in which Principal's title insurance is involved;

    c. disburse such funds only for the purposes for which they were entrusted;

    d. maintain an escrow ledger for each title insurance order involving fiduciary funds, which ledger shall separately reflect the escrow activity for each order;

    e. maintain a control account showing total fiduciary liability for each escrow bank account: and

    f. reconcile monthly the control account and ledger records to the monthly bank statement.

Principal shall have the right to examine, audit and approve Agent's accounting procedures to assure compliance with Principal's Escrow Accounting Manual, a copy of which is being delivered to Agent simultaneously with the execution of this Contract.

    J.    Comply with all applicable laws and regulations relating to the conduct of Agent's business.

K.    Comply with all bulletins, manuals and other instructions furnished to Agent in writing, by facsimile or other electronic transmission by Principal. If any reasonable doubt exists with regard to the insurability or marketability of title or as to whether a particular risk is extra-ordinary or extra-hazardous, Agent shall contact Principal or Principal's designated underwriting counsel for guidance and approval. Principle shall forthwith provide same.

L.    The parties hereto acknowledge that Agent is not an agent of Principal for purposes of conducting a Closing, as defined in Paragraph 7H hereof; however, because Principal may be subject to allegations of liability for acts of Agent with regard to Agent's settlement or escrow business, Agent shall cooperate with Principal in the performance of audits of Agent's escrow records, accounts and procedures. In addition, Agent agrees to provide to Principal, within thirty (30) days following receipt, a copy of any audit conducted by any accounting firm with respect to Agent's escrow records, accounts or procedures.

M.    Timely furnish the insured with a title insurance policy and other title assurances Agent is obligated to issue.

N.    Maintain in confidence the terms and conditions of this Contract.

5.    **RATES AND REMITTANCES.** Attached hereto and made a part hereof is a Schedule of Rates and Remittances. Agent shall quote, charge and collect the Rates set forth therein and shall report and remit to Principal premiums as set forth therein.

6.    **INSURANCE.** Agent shall immediately obtain and keep in full force, at Agent's expense, during the term of this Contract (i) Title Insurance Agent's Errors and Omissions Policy with opinion of title coverage, with an insurance company acceptable to Principal in a sum of not less than $ 500,000. per claim and $ 500,000. aggregate with a deductible provision of no more than $10,000. per loss; and (ii) Fidelity Insurance of N/A covering all officers, employees shareholders, partners, members and other principals of Agent with a loss payee provision in favor of Principal.

Agent agrees to furnish Principal annually with a copy of such policies and any renewals thereof and any other evidence that Principal may deem necessary to demonstrate compliance with this provision. Agent hereby assigns to Principal, Principal's legal representatives and assigns, all sums claims, demands and causes of action of whatsoever kind, that Agent may have against Agent's Errors and Omissions insurance company and against Agent's Fidelity insurance company, in connection with all claims arising out of the actions of Agent, its employees, agents, independent contractors and subcontractors which fall within the scope of Paragraph 6 hereof.

7.    **LIMITATIONS ON AGENT'S AUTHORITY.** Agent shall not without prior written approval of Principal:

    A.    Commit Principal to a risk in excess of $ 500,000. This limit shall include not only the commitment, policy, endorsement and/or other title assurance immediately being issued, but also risks where

        (i)Agent knows or has reason to believe that additional title insurance will be ordered covering substantially the same real

        property; or

        (ii)the aggregate liability will exceed the referenced limit such as condominium and time share projects (hereafter referred

        to as the 'Risk Limit").

    B.    Commit Principal to insure a title involving a risk which, if disclosed to Principal, would have been determined to be extra-ordinary or extra-hazardous, or which Agent knew or could have discovered, through the exercise of reasonable diligence, to have been based upon a disputed title. The provisions hereunder shall apply notwithstanding the fact that the dollar amount of the transaction or the risk is less than the Risk Limit set forth in Paragraph 7A hereof.

    C.    Alter the printed language of any commitment, policy, endorsement or other form furnished by Principal, or commit Principal to any particular interpretation of the terms or provisions thereof or issue any policy, endorsement or other title assurance which has not been approved for use by all required state regulatory agencies and by Principal.

    D.    Adjust or otherwise settle or attempt to settle any claim for loss for which Principal may become liable or engage counsel to represent Principal or the insured.

    E.    Accept service of process on Principal. Agent shall immediately notify Principal of any attempted service of process upon Agent for Principal. Agent shall also immediately notify Principal of any matter that is or may become a claim against Principal of which Agent has knowledge.

    F.    Incur bills or debts chargeable to Principal.

G.     Commit Principal to a risk with respect to a transaction in which Agent, a member of Agent's immediate family, a partner, member or shareholder of Agent or a member of the immediate family of a partner, member or shareholder of Agent has or will have a legal or an equitable interest.

H.     Handle escrow funds or conduct a Closing, as hereafter defined, of a transaction in which Agent, a member of Agent's immediate family, a partner, member or shareholder of Agent or a member of the immediate family of a partner, member or shareholder of Agent has or will have a legal or an equitable interest. The term "Closing" as used in this Contract shall mean the handling and disbursement of settlement funds or the providing of settlement services.

I.     Insure or commit to insure any property for an amount other than the fair market value of the estate or interest to be insured or the amount of the mortgage or portion thereof and other indebtedness secured thereby to be insured.

J.     Neither Agent nor any Affiliated Attorney of Agent will represent any insured as against the interests of Principal. The term "Affiliated Attorney" as used herein shall mean any attorney who is an employee, associate, member, shareholder, or partner of Agent or any law firm that owns any legal or beneficial interest in Agent.

8.     **LIABILITY OF AGENT.** Agent shall be liable to and agrees to indemnify and to save harmless Principal for all attorney's fees, court costs, administrative and other expenses and loss or aggregate of losses resulting from any one or more of the following:

A.     Errors or omissions in any commitment, policy, endorsement or other title assurance which were disclosed by the application, by the abstracting, examination or other work papers or which were known to Agent or which, in the exercise of due diligence, should have been known to Agent;

B.     Errors and/or omissions in any commitment, policy, endorsement or other title assurance caused by the abstracting or examination of title by Agent, Agent's employees, Agent's subcontractors or Agent's independent contractors;

C.     Failure of any title insurance commitment, policy, endorsement or other title assurance to correctly reflect the status of title, the description of the insured real property or the vesting of title;

D.     Failure of Agent, its officers and employees to comply with the terms of this Contract or with the guidelines, regulations or

instructions given to Agent by Principal;

E.     Any improper Closing or attempted Closing by Agent, including but not limited to: (i) loss or misapplication of customer funds, documents, or any other thing of value entrusted to Agent in any custodial or fiduciary capacity resulting in loss to Principal; (ii) failure to disburse properly or close in accordance with escrow and/or closing instructions; (iii) misappropriation of escrow or closing funds by Agent, its officers, subcontractors or employees;(iv) any loss pursuant to an Insured Closing Letter issued by Principal on behalf of Agent; or (v) failure to disburse immediately available funds.

F.     Issuance of a commitment, policy, endorsement or other title assurance insuring an extra-ordinary risk, extra-hazardous risk, or a risk Agent knew or should have know to be based upon a disputed title, not approved by Principal in advance of the issuance by Agent of documents committing Principal to insure.

G.     Any act or failure to act by Agent or its employees, officers, agents, independent contractors or subcontractors which results in allegations of liability with respect to Principal or which results in Principal being liable for punitive, contractual or extra-contractual damages.

H.     Assessment of a fine against Principal by the State Department of Insurance or the entity which supervises title insurance as a result of Agent's violation of any regulations of the State Department of Insurance or State laws or regulations applicable to title insurance.

I.     Failure of Agent to timely furnish insured with a title policy which Agent is obligated to issue. Agent agrees to immediately notify its fidelity bond carrier or errors and omissions insurance carrier of any claim for which Agent may be liable to Principal.

9.     **TERMINATION OF ISSUING AGENCY CONTRACT.** Either party hereto may cancel this Contract by giving to the other party thirty (30) days written notice by registered or certified mail of intent to cancel. Such written notice to Principal shall be addressed to the national office of Principal or to the regional office of Principal responsible for Agent's supervision. Such written notice to Agent shall be sent to the last known business address of the Agent. In the event of a material breach of this Contract by either party hereto, the non-breaching party may terminate immediately by giving notice in the manner set forth in this paragraph. Material breach on the part of the Agent shall include material deviation from the guidelines and instructions of Principal furnished to Agent.

Upon expiration or termination of this Contract, Agent shall immediately furnish to Principal a true, correct and complete accounting of all remittances due hereunder, all orders involving Principal's title assurances which have not closed, all orders involving Principal's title assurances which have closed but for which no policy has been issued and all commitments, policies, endorsements and other title assurances of Principal which have been issued but not reported to Principal. Agent shall also provide Principal access to all forms and all files relating to commitments, policies and other title assurances of Principal. Agent shall promptly make an accounting of and deliver to Principal all unused title insurance forms, manuals, advertising, promotional materials, other supplies exhibiting Principal's name or any variation thereof and all other supplies furnished by Principal to Agent, except those which Principal authorizes Agent to retain for purposes of completing pending transactions.

10.    **EXAMINATION OF RECORDS.** Agent agrees to provide to Principal access for examination purposes at any reasonable time or times to all files, books and accounts and other records of Agent relating to the business carried on hereunder and relating to the Closing of transactions involving a commitment to issue Principal's title assurances. Such right of examination may also be exercised after termination of this Contract.

11.    **SHORTAGE OF FUNDS.** In the event a shortage is revealed or discovered in Agent's accounts of funds entrusted to Agent by others or in the remittances due Principal hereunder, then Principal may declare immediately due and payable any debts owed by Agent, including any funds for which Principal may be responsible or have a liability therefor and Agent grants to Principal a lien on all

property of Agent as security for the repayment thereof. On demand by Principal, Agent sha... ..nmediately make good the shortage or convey and deliver possession of such property to Principal. A conveyance of such property shall not of itself relieve Agent of further liability for such shortage, but may be utilized to mitigate the liability of Agent therefor.

12.   **ADVERTISING.** Agent agrees that it will not use the tradename, trade mark or any variation thereof of Principal or any of its subsidiaries or affiliated entities on any of its advertising without the prior written approval of Principal.

13.   **CLAIMS.** If a policy claim is made to Agent, if Agent receives notice of a potential claim, or if Agent receives notice of litigation which may result in a claim, Agent shall, immediately, by facsimile transmission or overnight mail, give notice of same to Principal and shall lend all reasonable assistance, without charge to Principal, in investigating, adjusting or contesting said claim. Agent is not authorized to act as or to provide counsel in connection with said claim; however, Principal may seek Agent's assistance in the selection of counsel.

14.   **NOTICES.** Except as otherwise specifically set forth in this Contract, all notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given when delivered by hand or when mailed first class postage prepaid, certified or registered mail, return receipt requested:

If to Principal, to:   Chicago Title Insurance Company
                       1601 Market Street, Suite 2550
                       Philadelphia, Pa 19103
                       Attn: Chris Smith, Esq.

If to Agent, to:   Lexington & Concord Search and Abstract, LLC
                   65 West Street Road, Suite A-201
                   Warminster, Pa 18974
                   Attn: Glenn Randall, Esq.

or to such other address or addresses as each of the parties may communicate in writing to the other.

15.   **NON-WAIVER BY PRINCIPAL.** The failure of Principal to enforce strictly the performance by Agent of any provision of this Contract or to exercise any right or remedy following from Agent's breach of any condition herein or the acceptance by Principal of any payment, remittance or other performance during Agent's failure to perform or during Agent's breach shall not be deemed a waiver by Principal of its rights under this Contract as written and shall not be construed to be an amendment or modification of this Contract as written.

16.   **ENTIRE AGREEMENT; PRIOR AGREEMENTS.** This Contract sets forth the entire understanding and agreement between the parties hereto with respect to the subject matter hereof. No terms, conditions, or warranties, other than those contained herein, and no amendments or modifications hereto shall be valid unless made in writing and signed by the parties hereto. This Contract supersedes all prior understandings of any kind, whether written or oral, with respect to the Contract and the subject matter hereof.

17.   **ASSIGNMENT; BINDING EFFECT.** This Contract is not assignable by Agent except upon written consent of Principal. This Contract is, however, binding on and inures to the benefit of any corporate successor, parent corporation, affiliate or wholly owned subsidiary of Principal. The duties and obligations of Agent and any signatory or guarantor hereunder shall survive any merger, consolidation, dissolution or change in ownership or structure of Agent.

18.   **INVALID PROVISIONS.** If any provision of this Contract or the other documents contemplated hereby is held to be illegal, invalid, or unenforceable under present or future laws, such provisions shall be fully severable; the appropriate documents shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof or thereto; and the remaining provisions hereof or thereof shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision. There shall be added automatically as a part hereof or thereto a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and still be legal, valid and binding.

19.   **GOVERNING LAW.** This Contract shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

20.   **ATTORNEY'S FEES, COSTS, VENUE.** If a legal action or other proceedings are brought for the enforcement of this Contract, or because of any alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Contract, the prevailing party shall be entitled to recover reasonable attorneys' fees, administrative costs and other costs incurred in that action or proceeding in addition to any other relief to which it may be entitled. Venue for any such proceeding shall be a location of the Principal's choice.

21.   **OTHER AGREEMENTS VOID.** It is expressly understood and agreed by and between the parties hereto that this Contract sets forth all the promises, agreements, conditions and understandings between Principal and Agent with respect to this Contract and the subject matter hereof. Pertaining to such Contract there are no promises, agreements, conditions or understandings, either oral or written, between them other than as are herein set forth.

Rev. 2 / 98

22.    **CONTRACT.** The terms and conditions of this Contract shall apply only to Principal named herein and shall not apply to any company now or hereafter affiliated with Principal or with Principal's parent Chicago Title and Trust Company.

**IN WITNESS WHEREOF,** this Contract is executed this 30 day of January, 2003

AGENT:

LEXINGTON & CONCORD SEARCH AND ABSTRACT, LLC

By: _____
     NAME: Glenn Randall
Its: President

PRINCIPAL:

**CHICAGO TITLE INSURANCE COMPANY**

By: _____
     Ralph DiDomenico
Its: Regional Manager

## RATES AND REMITTANCES SCHEDULE

**THIS RATES AND REMITTANCES SCHEDULE** attached to that Issuing Agency Contract ("Contract") dated _1-30-03_ by and between **CHICAGO TITLE INSURANCE COMPANY** and **LEXINGTON & CONCORD SEARCH AND ABSTRACT, LLC.**

1. **RATES.**
   Agent shall quote, charge and collect the rates set forth in the schedule provided to Agent for the territory covered by this Contract. Principal reserves the right to revise said rates from time to time upon written notice to Agent.

2. **AGENT'S COMPENSATION AND PRINCIPAL'S REMITTANCES.**
   Agent shall be entitled to compensation on all premium-generating polices, commitments, endorsements and other title assurances which Agent issues on behalf of Principal. Agent's compensation shall be the rates and charges required herein to be collected, less the amounts required herein to be remitted to Principal. Principal's compensation shall be the amount herein required to be remitted by Agent. Agent shall assume full responsibility for the collection of all premiums due to Principal. Agent agrees that Principal's share of premiums collected shall be held in a separate account in trust for the benefit of Principal.

   All payments of Principal's share of the premium shall be accompanied by copies of the associated title insurance forms. The remitted premiums and reported policies and endorsements shall be mailed or delivered to Principal at the following address: 1601 Market Street, Suite 2550, Philadelphia, PA 19103 no later than sixty (60) days following the Effective Date, as hereinafter defined, of the policy, commitment or endorsement. The Effective Date of the policy or endorsement shall be the policy date set forth in Schedule A of the title insurance policy

   Where Principal purchases reinsurance or excess coinsurance, a decision which rests solely with Principal, the division of the rates as herein provided shall be computed on the net amount remaining after deducting the cost thereof. Agent shall remit to Principal the cost of such reinsurance or coinsurance.

   For each policy and endorsement of Principal issued by Agent pursuant to this Contract, Agent agrees to report and remit Fifteen percent (15%) of the premiums collected pursuant to the Rate Provision herein.

   Notwithstanding the foregoing, For each policy and endorsement of Principal, the order for which was initiated by Principal and referred to Agent, and which is issued by Agent pursuant to this contract, the Agent shall report and remit sixty percent (60%) of the rates set forth in the schedule provided, when the total of such premium and endorsement fees total $10,000 or more and fifty percent (50%) when the total of premium and endorsement fees is less than $10,000.

In the event that Agent fails to report and remit as set forth above, Principal shall be entitled to terminate this Contract, in addition to any other remedies provided in this Contract, in law or in equity.

This Rates and Remittances Schedule is executed to be effective the date hereof.

AGENT

LEXINGTON & CONCORD SEARCH AND ABSTRACT, LLC

By: _____
    Name: Glenn Randall

Its: President

PRINCIPAL:
CHICAGO TITLE INSURANCE COMPANY

By: _____
    Ralph DiDomenico
Its: Regional Manager

Rev: 2 / 98

# EXHIBIT "B"

### AMENDMENT TO
### TO ISSUING AGENCY AGREEMENT
### BETWEEN
### CHICAGO TITLE INSURANCE COMPANY
### AND
### LEXINGTON & CONCORD SEARCH AND ABSTRACT, LLC
### BEARING AN EFFECTIVE DATE OF JUNE 4, 2004.

The Issuing Agency Agreement by and between Chicago Title Insurance Company and Lexington & Concord Search and Abstract, LLC is hereby amended as follows:

Paragraph 1 is amended to add the following:

"1. Appointment of Agent in addition, Principal here by appoints Agent as a policy-issuing Agent of Principal for the promoting and transacting of a title insurance business in all the counties of the State of New Jersey."

Paragraph 5. The first two sentences are amended to read as follows:

5. Rates and Remittances. Attached hereto and made a part hereof are Schedules of Rates and Remittances. Agent shall quote, charge and collect the Rates set forth therein, depending on the state in which the property being insured is located.

Attached hereto and forming a part of Contract between Principal and Agent is the Schedule of Rates and Remittances entitled "Schedule of Rates and Remittances – New Jersey".

**CHICAGO TITLE INSURANCE COMPANY**

BY: _____
　　　Steven G. Day, Sr. Vice President

ATTEST: _____
　　　　Wanda Custer, Vice President

LEXINGTON & CONCORD SEARCH & ABSTRACT, LLC
BY: _____
　　　Glenn Randall, President

Date: June 4, 2004

## CHICAGO TITLE INSURANCE COMPANY

### SCHEDULE OF RATES AND REMITTANCES
#### attached  to and forming a part of Contract between

### CHICAGO TITLE INSURANCE COMPANY ("Principal") and

### LEXINGTON & CONCORD SEARCH & ABSTRACT, LLC ("Agent")
#### dated MAY 12, 2003.

### RATES

1.  *Incorporated by reference herein is the "Manual of Rates and Charges for Title Insurance" of the New Jersey Land Title Insurance Rating Bureau, which is currently in effect, or as the same may be amended or replaced from time to time during the period of this contract.  Agent shall quote, charge and collect said rates for each policy issued.*

2.  *For extraordinary or extra-hazardous risks and for extensions of policy coverage not provided for in said manual, Principal reserves the right to set and determine the charge.  A special risk percentage endorsements (i.e. those for which the rate is a percentage of the premium), such as Zoning, Non-Imputation, etc. are added to the premium and a special risk charge of $25.00 is to be collected and remitted to the Company every time a "CSL" Closing Service Letter is issued by the agent.*

3.  *If said manual does not include service or processing charges, Agent shall determine and fix those charges in accordance with his usual and customary practices.*

### REMITTANCES

4.  *For each commitment, policy and endorsement of Principal, the order for which was initiated by Agent, and which is issued by Agent pursuant to this contract, Agent shall report and remit 20 % of the rates set forth in the Manual referred to in Paragraph numbered "1" of this Schedule.*

5.  *For charges made pursuant to Paragraph numbered "2" of this Schedule, Agent shall remit an amount as shall be agreed upon between Principal and Agent.*

6.  *Where Principal purchases reinsurance or excess coinsurance, a decision which rests solely with Principal, the division of the rates as defined in Paragraph numbered "4" of this schedule as herein provided shall be computed on the net amount remaining after deducting the cost*

*thereof. Agent shall remit to Principal the cost thereof. Agent shall remit to Principal the cost of such reinsurance or coinsurance.*

7. *Agent agrees that remittances will be paid at the time of reporting policies issued or before to the Principal. The payment of remittances, and the simultaneous reporting of policy copies issued during the preceding month, shall be mailed to the Principal's Headquarters Office within 15 days of the issuance of the policy, by the 15th day of each month. Principal will supply to Agent an Agency Billing and Statistical Manual and subsequent Amendments thereto, which set forth additional remittance information.*

## *COMPENSATION*

8. *Principal's compensation shall be the amount required to be remitted hereunder by Agent. Agent's compensation shall be the rates and charges herein required to be collected, less the amounts to be remitted to Principal.*

*AGENT: LEXINGTON & CONCORD SEARCH & ABSTRACT, LLC*

*PRINCIPAL: CHICAGO TITLE INSURANCE COMPANY*

*BY:*
    *GLENN RANDALL, PRESIDENT*

*BY:*
    *STEVEN G. DAY*
    *SR. VICE PRESIDENT*

*ATTEST:*
*BY:*
    *WANDA CUSTER*
    *VICE PRESIDENT*

*DATE: May 12, 2004*

# EXHIBIT "C"

*PERSONAL UNDERTAKING TO INDUCE **CHICAGO TITLE INSURANCE COMPANY** TO ENTER INTO AN ISSUING AGENCY CONTRACT WITH **LEXINGTON & CONCORD SEARCH & ABSTRACT, LLC** DATED **SEPTEMBER 5, 2003.***

*In order to induce Chicago Title Insurance Company to enter into a certain Agency Contract dated May 12, 2004, with **LEXINGTON & CONCORD SEARCH & ABSTRACT, LLC** the undersigned jointly and severally do hereby guarantee full and faithful performance of the terms and obligations of **LEXINGTON & CONCORD SEARCH & ABSTRACT, LLC** under said Issuing Agency Contract and jointly and severally do hereby agree to fully indemnify Chicago Title Insurance Company from any and all loss it may sustain by reason of the failure of **LEXINGTON & CONCORD SEARCH & ABSTRACT, LLC** to perform its duties and obligations under said Agency Contract. Except for Errors and Omissions of searchers, surveyors and other subcontractors.*

*It is further understood and agreed that the terms and conditions of this contract and agreement shall not be disclosed, transferred or otherwise disseminated to any person or entity other than the parties named herein.*

*SIGNED:* _____
             *GLENN RANDALL*